ERNESTINA JULIANO, complainant-appellant,

*v.*

LUIGI MARTUCCI, defendant-respondent.

[Submitted October 28th, 1933. Decided January 5th, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bigelow, who filed the following opinion:

"This is a suit for maintenance under section 26 of the Divorce act. The only issue is whether the parties are husband and wife. Is complainant the defendant's wife or was

she his mistress? She claims the status of wife not as the result of a ceremonial marriage but by reason of an informal oral agreement.

"Complainant came to Paterson from Italy in 1922. She went to live with two sisters who had preceded her to this country, in the household of Dr. Filippo Martucci. Among the members of the household was his son, the defendant, then about twenty years old. Complainant was ten years his senior. Her testimony is substantially as follows: He was attentive to her from the first, and after six months they became secretly engaged. Two years later, 1924 or 1925, young Martucci said that he wished to marry her immediately but that they could not have an ordinary wedding because his father would hear of it and they must keep their marriage secret; that the law of America recognized as valid a marriage by simple agreement between the parties without any ceremony, and that this was the kind of a marriage he proposed. Thereupon, they did agree with each other that they were man and wife. After that and until June, 1929, they continued to live in the same household and had frequent intercourse with each other, although they retained separate rooms and preserved to all outward appearances their status as unmarried persons. She confided to only two persons that they were married.

"In June, 1929, the defendant married another woman. He did not tell complainant or any member of his own family that he was going to marry, but as soon as the ceremony had been performed, he wrote his father a letter telling of the marriage. Dr. Martucci immediately told the news to complainant and the other members of the household and the fact of the marriage became generally known. The defendant and the lady whom he had married set up a separate household and lived together as man and wife. About six months later, complainant called on defendant at his place of business to ask him to come back to her. After the interview had lasted half an hour or so, defendant called a policeman to put her out. According to complainant's testimony, he told the policeman that she was his housekeeper and was making

trouble for him, and she replied, 'I am his wife,' and the defendant merely turned his back and said nothing. The defendant denies this. The police officer was not called as a witness. Counsel for complainant told the court that he had expected the officer to be present to testify in corroboration of complainant.

"Within a month or so of the time that complainant called on defendant as above related, one of her sisters married Dr. Martucci. The other sister and complainant continued to live at Dr. Martucci's house in Paterson until he sold the house in the summer of 1930. That same summer, complainant caused defendant to be arrested on a charge of bigamy and also filed her bill in the present suit.

"An agreement in the present tense to be man and wife, otherwise valid, is an effective marriage even though the relationship be kept secret. But secrecy, unless satisfactorily explained, casts doubt on the intention of the parties to become man and wife, since secrecy is usually an element of an illicit relation and not of lawful wedlock. The reasons which complainant testified that defendant gave her for keeping the marriage secret, seem very flimsy to me and not such as would have influenced complainant to keep secret the relationship. Her testimony is not corroborated in any important respect, except by one Tartaglione. He testified not only that defendant many times alluded to complainant as his wife but also that defendant, in his presence, addressed complainant as his wife. If this were the fact, I am sure that complainant would likewise have testified, but she did not testify that defendant ever called her his wife in the presence of Tartaglione. Tartaglione, after defendant was arrested for bigamy, wrote him a letter in which he said that the charge was absolutely absurd. His letter does not mention what the charge was and Tartaglione testified that he did not then know that defendant was accused of bigamy; that he did not know the accusation but merely thought that complainant was making trouble for him. A few months before the final hearing, Tartaglione tried unsuccessfully to borrow $50 from defendant. I do not believe Tartaglione's testimony.

"Dr. Martucci testified that when he told complainant of his son's marriage to the other woman, complainant confided to him that her relations with his son had been intimate; that she did not assert then or at any time until August, 1930, that she was his wife. Two friends of the family, Mr. DeLorenzo, a member of the bar, and the Reverend Roberto Di Bacus, a priest, also testified to similar conversations with complainant when first she learned of defendant's marriage. It so happened that the woman whom defendant married had had a prior matrimonial experience and had been divorced. These two witnesses assert that complainant exclaimed that if defendant could marry a divorced woman, he could have married complainant.

"If complainant had actually considered herself to be the wife of defendant, she would have made that fact known immediately she learned that defendant had married another. Her failure to do so is strong evidence that she did not consider herself as his wife. I am inclined to accept as true her version of what occurred when she called on defendant at his place of business five months later; that she then asserted that she was his wife, but I think this was an afterthought on her part—a story which she developed after defendant had left her for another woman. I find that the parties to this suit are not husband and wife and that the bill of complaint must be dismissed."

*Mr. Milton Schamach,* for the complainant-appellant.

*Mr. David L. Cole,* for the defendant-respondent.

Per Curiam.

We concur in the vice-chancellor's finding that the parties to the suit are not husband and wife and that the bill of complaint should be dismissed, and, in the main, we also agree with his reasoning. However, the statement that "an agreement in the present tense to be man and wife, otherwise valid, is an effective marriage even though the relationship be kept secret" does not seem to be essential to the conclusion reached and is susceptible of rather broader application than we wish

to sponsor. We do not hold, and we think that the vice-chancellor did not mean to hold, that a marriage may be established merely by the uncorroborated testimony of one of the alleged contracting parties that there had been such an agreement known only to the two persons involved. *Atlantic City Railroad Co.* v. *Goodin, 62 N. J. Law 394,* did not go that far.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.